WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Andrew N. Milsap,           )
                            )
        Plaintiff,          )       No. CIV 06-0209 PHX RCB
                            )
        vs.                 )            O R D E R
                            )
U-Haul Truck Rental Co;     )
Republic Western Ins        )
Co,                         )
                            )
        Defendants.         )
                            )
_____    )

Currently there are three motions pending before the court:
(1) a motion to dismiss for failure to state a claim upon which
relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) by
defendant Republic Western Insurance Company ("Republic") (doc. 6);
or alternatively, a motion for a more definite statement pursuant
to Fed. R. Civ. P. 12(e); (2) a motion to dismiss for failure to
state a claim upon which relief may be granted pursuant to Fed. R.
Civ. P. 12(b)(6) and to dismiss for lack of subject matter
jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) by defendant U-

1  Haul Company of Arizona[1] ("U-Haul") (doc. 8); and (3) a "Motion to

2  Amend Pleadings" pursuant to Fed. R. Civ. P. 15 by plaintiff *pro se*

3  Andrew N. Milsap (doc. 11).

4       Only defendant U-Haul requests oral argument.  Doc. 8.

5  Finding oral argument unnecessary, the court denies this request.

6                          ***Discussion***

7  **I.  *Request for Summary Disposition***

8       Plaintiff Milsap did not file his response to Republic's March

9  20, 2006, motion to dismiss until May 8, 2006.  Local Rule 7.2(c)

10 mandates that responsive memorandum be filed within ten days after

11 service of a motion.  Even allowing plaintiff an additional three

12 days to respond to service by mail in accordance with Fed. R. Civ.

13 P. 6(e), clearly his May 8th response was not timely under LRCiv

14 7.2(c).

15      Pursuant to LRCiv 7.2(i) the court could, as Republic requests

16 (doc 13), deem plaintiff's failure to timely respond to its

17 dismissal motion as "consent to the . . . granting of" such relief.

18 See LRCiv 7.2(i).  Given plaintiff's *pro se* status, however, and

19 because Republic has not been prejudiced by this late filing, the

20 court denies Republic's request to summarily grant its motion to

21 dismiss.

22 **II.  *Motion to Amend***

23      At the outset it is necessary to address plaintiff's motion to

24 amend because the outcome of this motion will determine whether the

25 dismissal motions by Republic and U-Haul should be deemed

26

27 ─────────────────

28      [1]   This defendant was incorrectly named in the complaint as
   "U-Haul Truck Rental Co."

1  challenges to the original complaint or to the amended complaint.

2      Rule 15(a) provides that a party has the right to amend its

3  "pleading once as a matter of course at any time before a

4  responsive pleading is served[.]" Fed. R. Civ. P. 15(a).  Once a

5  responsive pleading is served, however, Rule 15(a)  provides that

6  "a party may amend [his] pleading only be leave of court or by

7  written consent of the adverse party; and leave shall be freely

8  given when justice so requires."  <u>Id.</u>  Presuming that its motion to

9  dismiss is a responsive pleading, Republic contends that the court

10  should deny plaintiff Milsap's motion to amend because leave to

11  amend would be futile.  U-Haul did not file a response to this

12  motion to amend.

13      Republic's opposition is unavailing because it is based upon

14  an incorrect reading of Rule 15(a).  Despite Republic's assumption

15  to the contrary,  "a motion to dismiss is *not* a Rule 15(a)

16  'responsive pleading.'"[2]  <u>Paulson v. Carter</u>, No. CV-04-1501-HU,

17  2005 WL 35856, at *4 (D.Or. January 6, 2005) (citing <u>Shaver v.</u>

18  <u>Operating Eng'rs Local 428 Pension Trust Fund</u>, 332 F.3d 1198, 1201

19  (9th Cir. 2003)) (emphasis added).  Therefore, because "the filing

20  of a [motion to dismiss]  before [an] answer [does not] terminate

21  the right to amend[,]  . . . a motion for leave to amend (though

22  unnecessary) *must be granted* if filed."  <u>Knauss v. Bank of America</u>,

23  No. CV 06-0952-PHX-MHM, 2006 WL 2640411, at *1 (D.Az. Sept. 11,

24

---

25         [2]  Fed. R. Civ. P. 7(a) defines "[p]leadings" exclusively as

26  "a complaint and an answer; a reply to a counterclaim denominated as
such; an answer to a cross-claim, if the answer contains a cross-

27  claim; a third party-complaint if a person who was not an original
party is summoned under the provisions of Rule 14; and a third-party

28  answer, if a third-party complaint is served."

1   2006) (quoting Breir v. N. Ca. Bowling Proprietors' Ass'n, 316 F.2d

2   787, 789 (9th Cir. 1963)).  Given that defendants Republic and U-

3   Haul filed motions to dismiss rather than responsive pleadings,

4   plaintiff Milsap retained his right to amend his complaint once "as

5   a matter of course" pursuant to Rule 15(a).  Under these

6   circumstances, the court grants plaintiff's motion to amend.  See

7   Knutson v. Winco Foods, Inc., No. CV-02-1145-ST, 2002 WL 31972183,

8   at *1 (D.Or. Nov. 27, 2002) (although plaintiff retained the right

9   to amend her complaint without leave of court because no responsive

10  pleading had been filed, since she requested leave, the court

11  granted such relief).  Granting plaintiff's motion to amend means

12  that his amended complaint becomes the "operative pleading" for

13  purposes of resolving the present motions to dismiss.  See Paulson

14  v. Carter, No. CV-04-1501-HU, 2005 WL 35856, at *4 (D.Or. Jan. 6,

15  2005).

16      An amended complaint supersedes the original complaint, and so

17  "in some instances the filing of an amended pleading moots a motion

18  to dismiss[.]" Robinson v. California, No. CIVS041888GEBDADPS, 2005

19  WL 1561524, at *1(E.D.Cal. June 29, 2005).  The court declines to

20  find that the pending motions to dismiss are moot, however, because

21  for the most part "plaintiff's amended complaint does not cure the

22  deficiencies detailed in [those] motion[s]."  Id.  Moreover, given

23  the substantial similarity between the original and amended

24  complaints, requiring Republic and U-Haul[3] to serve another set of

25  dismissal motions specifically directed at the amended complaint

26

27  _____

28      [3]   Hereinafter, unless indicated to the contrary, "defendants"
    shall be read as referring to U-Haul and Republic.

would be a waste of resources.   Thus, the court will "consider"
the current "motion[s] to dismiss as directed at plaintiff's
amended complaint[,]" rather than at his original complaint.   See
id. (footnote omitted) (citing Schwarzer, Tashima and Wagstaffe,
*Federal Procedure Before Trial*, ¶ 9:262 (The Rutter Group 2004)).

### A.  Amended Complaint[4]

In his amended complaint plaintiff alleges that on January 17,
2004, while "driving a rental U-Haul Truck[,]" defendant Albert
Valencia backed into plaintiff's vehicle.   Doc. 11 at 2,[5] ¶ 2.
Allegedly the truck which Valencia was driving hit plaintiff's
vehicle "with such speed and force that the trailer hitch went
through the door of plaintiff['s] vehicle on the driver[']s side to
the inside."   Id.   Based on the foregoing, plaintiff alleges that
Mr. Valencia was "negligent, reckless, and careless[]" in several
ways."   Id. at 2, ¶ 5; and at 3, ¶ 6.   Plaintiff further alleges
that he sustained injuries to his left knee and back, which "were
caused solely by reason of" Valencia's negligence.   Id. at 2, ¶ 4.

After the accident, plaintiff explicitly contends that U-Haul
"quickly contact[ed]" him about the accident.   Id. at 3, ¶8.

---

[4]      Plaintiff did not, as LR15.1(a)(1) requires, separately
"attach a copy of the proposed amended pleading as an exhibit" to his
motion to amend.   Nor did he comply with Local Rule 15.1(2) requiring
him to lodge with the Clerk of the Court an original of his proposed
amended complaint.   See LRCiv 15.1.   Instead, plaintiff filed a
document entitled "Motion to Amend Pleadings," which basically
amounts to a proposed amended complaint.   Given plaintiff's *pro se*
status, the court will this time overlook plaintiff's failure to
comply with the Local Rules; and it will deem his motion to amend to
be his proposed amended complaint.   Accordingly, the facts recited
above are taken from that document.

[5]      For ease of reference, the court took the liberty of
numbering the pages in plaintiff's motion to amend.

1  Republic acknowledges  however that it "is, in fact, the insurer

2  which dealt with" plaintiff.  Doc. 6 at 2 n.2.  Thus for purposes

3  of the present motions Republic is assuming, as is the court, "that

4  the allegations relating to actions alleged to have been taken by

5  the insurer . . . actually refer to Republic [as U-Haul's carrier]

6  . . . and not [to] 'U-Haul[.]'" Id.

7      In any event, after being contacted by Republic, plaintiff

8  filed a "claim report," to which Republic responded by paying

9  plaintiff $4,400.00 for property damage to his vehicle.  Doc. 11,

10  at 3, ¶ 8.   At that time plaintiff asserts that he did not "feel

11  [that] he was hurt bad enough[] to need medical treatment[,]" so

12  "he . . . told the agent" that he "only had soreness of the back

13  and . . . on his left side."  Id.  But "two or three months" after

14  the accident plaintiff began "experiencing . . . mid to lower back

15  pain[,]" which he attributed to a prior work-related injury.  Id.

16  at 3-4, ¶ 8.

17   A few weeks later plaintiff developed problems with his left

18  knee.  See id.  It "would give out on him without warning and

19  [plaintiff] would fall down in pain, and [be] unable to stand."

20  Id.  In the ensuing months plaintiff went through a series of

21  diagnostic tests, culminating in a medical resonance image test

22  ("MRI") in October 2005.  The MRI revealed that plaintiff had "a

23  large tear in his ligaments on his left knee[,]" which did require

24  surgery.  Id. at 4, ¶ 8.

25      After his doctors advised plaintiff that "the type of injury

26  he had was usually the result of a car accident," he "attempted to

27  get [Republic] to re-open his claim and investigate it."  Id. at 4,

28  ¶ 9.  Republic informed him that it would refer his claim to "agent

1   Joe Lascola" for investigation.  Id.  After several weeks passed

2   and he did not hear from Lascola, plaintiff called to "explain" his

3   injuries to Lascola, including the results of the MRI.  Id. at 5,

4   ¶ 9.  Plaintiff alleges that Mr. Lascola "became very bias[ed] and

5   ar[r]ogant and discriminatory[.]"  Id.  Plaintiff further alleges

6   that Mr. Lascola told him that Lascola was aware that plaintiff had

7   filed personal injury complaints in other courts.  See id.

8   Supposedly Lascola then informed plaintiff that he did not think

9   this particular claim had any merit, and thus it did not warrant

10  any investigation.  See id.

11      Among other things, plaintiff responded by telling Lascola

12  that "as an agent his job was to investigat[e] [plaintiff's]

13  claim[.]"  Id.  When Lascola retorted that it had "been to[o] long

14  since the accident," plaintiff told him that he intended to "seek

15  legal action."  Id.  Plaintiff contends that as a result of the

16  foregoing Lascola "deprive[d] . . . plaintiff of his right to have

17  his claim investigated in accordance [with] the laws that govern

18  ins[urance] co[mpanies] in . . . Arizona."  Id. at 5-6, ¶ 10

19  (citing Ariz. Rev. Stat. Ann. §12-542[6]).

20      Next plaintiff expands upon his discrimination claims against

21  Mr. Lascola.  More specifically, plaintiff alleges that he "is on

22  disability and indigent" and Lascola knew this from plaintiff's

23  file pertaining to the property damage claim, and that Lascola

---

25      [6]   Plaintiff's reference to section 12-542 in this context is
    puzzling given that that statute sets forth a two year statute of
26  limitations for personal injury actions in Arizona.  See A.R.S. § 12-
    542.  Thus, despite plaintiff's assertion to the contrary, on its
27  face that statute of limitations has nothing to do with "the laws
    that govern ins[urance] co[mpanies] in . . . Arizona."  Doc. 11 at ¶
28  10.

1  "use[d] this and the fact that the plaintiff ha[s] [previously]

2  litigated" to "further discriminate against plaintiff[.]" Id. at 7,

3  ¶14.  Plaintiff concludes his allegations against Lascola by

4  averring that "when . . . Lascola refuse[d] to investigate . . .

5  plaintiff['s] claim," Lascola "[d]enied . . . plaintiff the . . .

6  rights and protection[s] that [are] guaranteed for [sic] all

7  cit[i]zen[s]." Id.

8      Plaintiff goes on to allege that "under 42 USC and [T]itle VII

9  of the American[s] with Disability Act of 1964[,] disable[d]

10  persons are to be treated equally as to any priv[i]le[]ges, laws,

11  polic[ies], and fairness as any other persons are." Id.  In a

12  similar vein plaintiff alleges that Republic or Lascola or both

13  "deni[ed] [him] of a right to be treated the same as any other

14  client or person that[']s filing or has file[d] a claim[.]" Id. at

15  6, ¶ 13.  Plaintiff further alleges that Republic or Lascola or

16  both have "violate[d] [his] rights to the same treatment,

17  priviledges [sic], and law, that[']s afforded all person[s]

18  according to Ariz. Rev. Stat. Ann 12-542 for personal injury

19  claims." Id.

20      Following these factual allegations, plaintiff's complaint

21  includes a muddled jurisdictional statement, which reads as

22  follows: "The plaintiff is bring[ing] his claim[s] under 42 USC &

23  Title VII of the American[s] With Disability Act of 1964, and the

24  Ariz Rev Stat. Ann 12-542 for personal injury claim and

25  discrimination." Id. at 7.  Plaintiff is seeking $800,000.00 for

26  damages "for the long suffering and pain and medical expenses"

27  which he has incurred "due to the neg[ligence] and actions

28  mention[ed] in []his complaint." Id.

### III.  Motions to Dismiss

As mentioned at the outset, both defendants are moving to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).  U-Haul, but not Republic, is also moving to dismiss under Fed. R. Civ. P. 12(b)(1) on the theory that the court lacks subject matter jurisdiction. "Customarily, a federal court first resolves doubt about its jurisdiction over the subject matter," and so, too, will this court.  See Ruhrgas Ag v. Marathon Oil Co., 526 U.S. 574, 578 (1999).  The court will first address U-Haul's jurisdiction argument because if the court lacks subject matter jurisdiction, it "must dismiss the complaint in its entirety." Arbaugh v. Y & H Corp., 126 S.Ct. 1235, 1244 (2006) (citation omitted).

### A.  Subject Matter Jurisdiction

As defendants read the complaint, plaintiff is alleging federal question jurisdiction based upon claimed violations of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12131, et seq. ("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.  U-Haul contends that because plaintiff did not allege that he exhausted his administrative remedies, this court lacks subject matter jurisdiction over his ADA and Title VII claims because exhaustion is a "necessary condition[] precedent" to the exercise of this court's jurisdiction over such claims.  See Doc. 16 at 2-3.  Plaintiff did not address this requirement.

### 1.  Rule 12(b)(1) Legal Standard

Fundamentally, federal courts are courts of limited jurisdiction.  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  Thus, "[l]imits upon federal jurisdiction must not be

1  disregarded or evaded."  <u>Association of Irritated Residents v. C &</u>

2  <u>R Vanderham Dairy</u>, 435 F.Supp.2d 1078, 1084 (E.D. Cal. 2006)

3  (citing <u>Owen Equipment & Erection Co. v. Kroger</u>, 437 U.S. 365, 374

4  (1978)).  "A Rule 12(b)(1) motion may be either facial, where the

5  inquiry is confined to the allegations in the complaint, or

6  factual, where the court is permitted to look beyond the complaint

7  to extrinsic evidence."  <u>Id.</u> (citing, *inter alia*, <u>Wolfe v.</u>

8  <u>Strankman</u>, 392 F.3d 358, 362 (9th Cir. 2004)).  Regardless of the

9  nature of the inquiry, it is the plaintiff's burden to establish

10 that subject matter jurisdiction is proper.  <u>Id.</u> (citing, *inter*

11 *alia*, <u>Kokkonen</u>, 511 U.S. at 377).

12      "This burden, at the pleading stage, must be met by pleading

13 sufficient allegations to show a proper basis for the court to

14 assert subject matter jurisdiction over the action."  <u>Id.</u> (citing

15 <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178, 189 (1936)

16 and Fed. R. Civ. P. 8(a)(1)).  "The pleading must show

17 'affirmatively and distinctly the existence of whatever is

18 essential to federal jurisdiction, and if [it] does not do so, the

19 court, on having the defect called to its attention or on

20 discovering the same, must dismiss the case, *unless* the defect can

21 be corrected by amendment.'"  <u>Id.</u> (quoting <u>Tosco Corp. v.</u>

22 <u>Communities for a Better Env't</u>, 236 F.3d 495, 499 (9th Cir. 2001))

23 (emphasis added).  Where, as here, U-Haul "challenges jurisdiction

24 facially, all material allegations in the complaint are assumed

25 true, and the question for the court is whether the lack of federal

26 jurisdiction appears from the face of the pleading itself."  <u>Id.</u>

27 (internal quotations and citations omitted).

28 . . .

### 2. Exhaustion

Before considering U-Haul's exhaustion argument, it should be noted that the ADA is a broad and remedial statute, applicable in several different contexts.  The ADA  prohibits "discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)."  PGA Tours, Inc. v. Martin, 532 U.S. 661, 674 (2001) (footnotes omitted).  Additionally, "Title IV of the ADA precludes retaliation against employees who seek to enforce their statutory rights under the ADA."  Head v. Glacier Northwest Inc., 413 F.3d 1053, 1064 n.54 (9th Cir. 2005) (citation omitted).  When discussing plaintiff's putative ADA claims, U-Haul did not uniformly distinguish between these various theories of liability.  That distinction is important though because not only do the elements of proof differ somewhat depending upon the theory of ADA liability, but exhaustion is not a jurisdictional prerequisite for all types of  ADA claims.

Title VII of the Civil Rights Act of 1964 and Title I the ADA "contain[] the identical requirements for filing an administrative charge of discrimination[.]"  See Sumner v. Sacred Heart Medical Center, No. CV-04-0285-EFS, 2005 WL 2415969, at *2 (E.D.Wash. Sept. 30, 2005) (citations omitted).  Under both statutes, "[a] plaintiff exhausts h[is] administrative remedies by timely filing h[is] charge with the EEOC [Equal Employment Opportunity Commission] or the appropriate state agency[]" within the statutorily prescribed time limits.  Id. (citation omitted).  Thus, where a plaintiff does not timely file such a charge, the court lacks subject matter jurisdiction to consider either his Title VII claims, Vasquez v.

1  County of Los Angeles, 349 F.3d 634, 644 (9th Cir. 2003) (citations

2  omitted) ("To establish subject matter jurisdiction over [a] Title

3  VII . . . claim, [a plaintiff] must exhaust] his administrative

4  remedies by filing a timely charge with the EEOC."); or his claims

5  brought pursuant to Title I of  the ADA.  Sumner, 2005 WL 2415969,

6  at *2 (citations omitted)  ("[F]or a federal court to have subject

7  matter jurisdiction over [an] ADA [Title I] claim[], the plaintiff

8  must have exhausted all administrative remedies.")  Likewise, to

9  the extent a plaintiff may be asserting a retaliation claim under

10 Title IV of the ADA, if the underlying basis of such a claim is the

11 exercise of his rights under Title I, "exhaustion procedures must

12 be followed."  See Schneider v. City and County of San Francisco,

13 No. C-97-2674-CAL, 1999 WL 144878, at *11 (N.D.Cal. March 10, 1999)

14 (citations and footnote omitted).

15      What U-Haul fails to take into account, however, is that this

16 exhaustion requirement does not come into play when a plaintiff is

17 seeking to recover under Title II (public services) of the ADA.

18 Banks v. Modesto City Schools Dist., No. CVF046284RECSMS, 2005 WL

19 2233213, at *6 (E.D. Cal. Sept. 9, 2005) (citation omitted).  Nor

20 is exhaustion a jurisdictional predicate when a plaintiff is

21 seeking to recover under Title III (Public Accommodations) of the

22 ADA.  Botosan v. Paul McNally Realty, 216 F.3d 827, 831-32  (9th

23 Cir. 2000).  By extension then, exhaustion is not a condition

24 precedent to the exercise of subject matter jurisdiction over a

25 Title IV retaliation claim for which the underlying basis is an

26 alleged violation of either Title II or III of the ADA.

27      Conspicuously absent from plaintiff Milsap's complaint are any

28 allegations that he filed a charge, timely or otherwise, with the

1   EEOC or with the Arizona Civil Rights Division.  Clearly then

2   plaintiff has not met his burden of establishing that this court

3   has subject matter jurisdiction over his Title VII claim or over

4   his ADA claims to the extent that they are premised upon alleged

5   violations of Title I of that Act.  As a *pro se* litigant,

6   ordinarily the court would give plaintiff Milsap an opportunity to

7   amend his complaint to cure his failure to plead exhaustion, or to

8   state a cognizable basis for being excused from exhaustion with

9   respect to these claims.   See <u>Mullin v. Las Lomitas Elementary</u>

10  <u>District</u>, No. 03-5268 MMC, 2004 WL 2848021, at *3 (N.D. Cal. April

11  13, 2004).  Even if plaintiff Milsap could amend his complaint to

12  show exhaustion, as will be more fully discussed below, his Title

13  VII and, with one exception, his ADA claims otherwise would be

14  barred.  Thus, there is no need to allow plaintiff to further amend

15  his complaint to cure this jurisdictional defect.

16      ***B. Failure to State a Claim***

17          ***1.  Rule 12(b)(6) Legal Standard***

18      In contrast to a Rule 12(b)(1) motion for dismissal, a motion

19  brought pursuant to Rule 12(b)(6) challenges the legal sufficiency

20  of a complaint.   <u>Ileto v. Glock Inc.</u>, 349 F.3d 1191, 1199-2000

21  (9th Cir. 2003).  On a Rule 12(b)(6) motion "[a]ll allegations and

22  reasonable inferences are taken as true, and the allegations are

23  construed in the light most favorable to the non-moving party, but

24  conclusory allegations of law and unwarranted inferences are

25  insufficient to defeat a motion to dismiss." <u>Simpson v. AOL Time</u>

26  <u>Warner, Inc.</u>, 452 F.3d 1040, 1046 (9th Cir. 2006) (internal

27  quotation marks and citation omitted).  "Dismissal is proper under

28  Rule 12(b)(6) if it appears beyond doubt that the non-movant can

1  prove no set of facts to support its claims." Id. (internal

2  quotation marks and citation omitted).  "The court may dismiss a

3  complaint as a matter of law [pursuant to that Rule] for (1) lack

4  of a cognizable legal theory or (2) insufficient facts under a

5  cognizable legal claim." SmileCare Dental Group v. Delta Dental

6  Plan of California, Inc., 88 F.3d 780, 782 (9th Cir. 1996)

7  (internal quotation marks and citation omitted).  At the same time,

8  however, courts have a "duty to construe pro se . . . pleadings

9  liberally[.]" United States v. Rodriquez-Lara, 421 F.3d 932, 938

10 n.2 (9th Cir. 2005) (citation omitted); see also Hughes v. Rowe,

11 449 U.S. 5, 9 (1980) (Pro se complaints, "however inartfully

12 pleaded[,] are held to less stringent standards than formal

13 pleadings drafted by lawyers[.]")  With these standards firmly in

14 mind, the court has carefully examined defendants' motions to

15 dismiss for failure to state a claim upon which relief may be

16 granted.

17          **2.  ADA**

18      To the extent plaintiff's complaint can be read as asserting

19 claims under the ADA, Republic contends that it is entitled to

20 dismissal of them because plaintiff has not alleged discriminatory

21 conduct of the type which the ADA proscribes under Titles I, II or

22 III of that statute. In its reply Republic further contends, with

23 no analysis, that plaintiff's ADA claim cannot survive this motion

24 to dismiss because he has not alleged that he is "an individual

25 with a disability[]" within the meaning of that Act.   Doc. 17 at 3

26 (citation omitted).

27      Construing plaintiff's complaint as asserting an employment

28 discrimination claim under Title I of the ADA, U-Haul, like

- 14 -

1   Republic, alleges that plaintiff has failed to state such a claim

2   because he has not alleged that he is an individual with a

3   disability within the meaning of that Act.  Like Republic, U-Haul

4   fails to offer any legal support for this argument.  Unlike

5   Republic, however, U-Haul contends that plaintiff's Title I claim

6   is deficient for a second reason.  U-Haul points out that to

7   succeed on a Title III ADA claim plaintiff "must establish himself

8   as an employee[,]'" which he cannot do.  See Doc. 8 at 3.  Next, to

9   the extent that plaintiff's complaint can be read as asserting a

10  claim for discrimination in "public accommodation" in violation of

11  Title III of the ADA, U-Haul contends that plaintiff has not

12  "allege[]d any facts whereby [it]s Arizona[] office lacked access

13  for [plaintiff] as an alleged disabled person."  Id.  For all of

14  these reasons, U-Haul contends that it is entitled to dismissal of

15  plaintiff's ADA claims pursuant to Fed. R. Civ. P. 12(b)(6).

16      Plaintiff did not directly respond to any of these defense

17  arguments.  Instead, plaintiff points out that in his motion to

18  amend he did "identify[] which defendant did what and under what

19  circumstances they did. . . [it]."  Doc. 15 at 5, ¶ 5(B).

20                          ***a.  Disabled***

21      U-Haul limits its argument that plaintiff is not an

22  "individual with a disability" to Title I of the ADA.  However,

23  regardless of which Title of the ADA forms the basis for

24  plaintiff's claims thereunder, he must allege that he is disabled

25  within the meaning of that Act.  See Allen v. Pacific Bell, 348

26  F.3d 1113, 1114 (9th Cir. 2003) (citation omitted) ("[T]o establish

27  a prima facie case [of employment discrimination] under the . . .

28  ADA . . . , [plaintiff] must first demonstrate that . . . he is

disabled[.]"); Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir.

2002) (citation omitted) (same to establish a Title II (public

services) claim); Chapman v. Pier 1 Imports, No. CIV. S-04-1339,

2006 WL 1686511, at *7  (E.D. Cal. June 19, 2006) (citations

omitted)  (same to establish a Title III (public accommodations)

claim).  Therefore, if plaintiff Milsap has not alleged that he has

a disability within the meaning of the ADA, defendants would be

entitled to dismissal for failure to state a claim irrespective of

which Title of that Act forms the basis for plaintiff's claims

thereunder.

The ADA defines the term "disability" to "mean[] . . . a

physical or mental impairment that substantially limits one or more

. . . major life activities. . . [;] . . . a record of such an

impairment; or, . . . being regarded as having such an impairment."

42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g).  The EEOC regulations

interpreting the ADA state, *inter alia*, "Major Life Activities

means functions such as caring for oneself, performing manual

tasks, walking, seeing, hearing, speaking, breathing, learning, and

working."  29 C.F.R. § 1630.2(i).  By the same token though,

"[t]emporary, non-chronic impairment of short duration, with little

or no long term or permanent impact, are usually not disabilities."

29 C.F.R. §1630, App. at p. 339.  "Such impairments may include,

but are not limited to, broken limbs, sprained joints, concussions,

appendicitis, and influenza."  Id.  "In conformity with th[ose]

Regulations, . . . courts . . . have uniformly held that back

sprains, broken ankles, *knee injuries*, *ligament damage* and bone

spurs are minor, temporary conditions which do not constitute ADA

disabilities even where the plaintiff is required to take a lengthy

1   medical leave."  <u>Haynal v. Target Stores</u>, No. 96-1599-K(RBB), 1996

2   WL 806706, at *2 (S.D.Cal. Dec. 19, 1996) (citations omitted)

3   (emphasis added).

4        It is a close call, but liberally construing plaintiff

5   Milsap's *pro se* complaint as the court must, <u>see</u> <u>Rodriguez-Lara</u>,

6   421 F.3d at 938 n.2, it finds that he has  sufficiently alleged

7   that he has a "disability" as the ADA defines that word.  To be

8   sure, on a continuum some of plaintiff's alleged injuries fall

9   closer to "temporary, non-chronic impairment[s] of short duration,"

10  than they do to a "disability."  For example, supposedly the MRI

11  revealed a "large tear in [plaintiff's] ligament[] on his left knee

12  [] and a sprain like tear to [that] knee."  Doc. 11 at 4, ¶ 8.  The

13  court cannot ignore the fact, however, that plaintiff's complaint

14  also includes an allegation that his knee and back injuries caused

15  him to be "disabl[ed] to function or walk [due to] constant pain in

16  his leg . . . and his knee giving out on him constantly."  <u>Id.</u> at

17  3, ¶ 7.  Further, plaintiff alleges that he has been "informed that

18  . . . his injury *may be* permanent."  <u>Id.</u> (emphasis added).

19  Moreover, even if plaintiff Milsap had not sufficiently alleged

20  that he has a disability, because it is not "absolutely clear that

21  [such a] deficienc[y] . . . could not be cured by amendment[,]" he

22  would be entitled to amend his complaint.  <u>See</u> <u>Hanft v. United</u>

23  <u>States</u>, No. CV-04-258, 2005 WL 1863321, at *2 (D. Idaho Aug. 4,

24  2005) (quoting <u>Cato v. U.S.</u>, 70 F.3d 1103, 1106 (9th Cir. 1995)).

25  In light of the foregoing, for purposes of the present motions, the

26  court will proceed on the assumption that plaintiff is disabled

27

28

1  within the meaning of the ADA.[7]

2  ### b. Discriminatory Conduct

3  Even operating from that assumption, the defendants' argument

4  that plaintiff fails to state a claim under the ADA is well taken.

5  Plaintiff's ADA claims cannot survive these motions to dismiss

6  because even assuming *arguendo* that he has properly pled that he

7  has a disability, with one exception which will be discussed below,

8  nowhere in his complaint does plaintiff allege that Republic or U-

9  Haul engaged in discriminatory conduct of the type which the ADA

10 prohibits.  This is so whether plaintiff's purported ADA claims are

11 analyzed in the context of employment, public services, public

12 accommodations, or retaliation.

13 ### i. Title I (Employment)

14 Plaintiff alleges that when he spoke with Mr. Lascola on the

15 telephone about his  injuries, Lascola "became very bias and

16 ar[r]ogant and discriminatory[.]" Doc. 11, at 5, ¶ 9.  Plaintiff

17 further alleges that during that conversation Lascola mentioned

18 that plaintiff had previously filed personal injury claims in

19 court.  See id. When plaintiff informed Lascola that he was going

20 to "seek legal action[,]" purportedly Lascola told him, "go right

21 ahead, have at it[;] you don't have a case."  Id.  Plaintiff

22 retorted that "the two year statute [of limitations] was not up[.]"

23 Id.  Allegedly Lascola said, "so what," ending that telephone

24

25 _____

       [7]   The court hastens to add, however, that without more it is
26 not convinced that plaintiff's allegation that he is "on disability"
    is necessarily synonymous with having a disability under the ADA.
27 Similarly, also without more, the allegation that plaintiff is "on
    disability" is too vague and conclusory to satisfy the ADA's
28 particularized statutory and regulatory definition of disability.

conversation.  Id.  Based upon this conversation plaintiff claims that Lascola, in his "capacity as a representative for Republic[,] . . . deprived . . . plaintiff of his right to have his claim investigated[.]" Id. at 5-6, ¶ 10.

The court assumes, as it must, the truth of these allegations. See Simpson, 452 F.3d at 1046.  Nevertheless, they are legally insufficient to state a claim for relief under Title I of  the ADA. "To state a prima facie case for discrimination under [Title I] of the ADA, [plaintiff] must prove that he is a qualified individual with a disability who suffered an adverse *employment action* because of his disability." Zivkovic v. Southern California Edison Co., 302 F.3d 1080, 1090 (9th Cir. 2004) (internal quotation marks and citation omitted) (emphasis added).  Obviously then, a critical element of such a claim is the existence of an employee-employer relationship. Haverly v. C.R. England, Inc., No. Civ.A.3:03 CV 363 S, 2005 WL 1168387, at *3 (W.D. Ky. May 17, 2005) (Plaintiffs "must first show that they were either employees or applicants of [defendant] to be protected by Title I of the ADA.") Plaintiff Milsap's complaint lacks any allegations that he had an employment relationship with U-Haul or Republic.  Therefore, to the extent plaintiff is relying upon Title I of the ADA as a basis for relief herein, these defendants are entitled to dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  See Link v. Rhodes, No. C 06-0386 MHP, 2006 WL 1348424, at *5 (N.D. Cal. May 17, 2006) (despite the fact that defendant law firm "likely qualifie[d] as an 'employer' under the ADA[,]" court dismissed ADA claim against it for "fail[ure] to allege or establish that the firm acted as [plaintiff's] employer[]").

1

### *ii.  Title II (Public Services)*

2      Plaintiff fares no better with his purported Title II ADA

3   claim.  Among other things, to state such a claim plaintiff must

4   allege that "he is otherwise qualified to participate in or receive

5   the benefit of some *public entity's* services, programs, or

6   activities; [and that] he was either excluded from participation in

7   or denied the benefits of the *public entity's* services, programs,

8   or activities, or was otherwise discriminated against by the *public*

9   *entity*[.]" McGary v. City of Portland, 386 F.3d 1259, 1265 (9th

10  Cir. 2004) (internal quotation marks and citation omitted)

11  (emphasis added).  The ADA defines "public entity" in relevant part

12  as "any State or local government" or "any department, agency,

13  special purpose district, or other instrumentality of a State or

14  States or local government."  42 U.S.C. § 12131(A)-(B).  Plaintiff

15  has not alleged any facts indicating that either U-Haul or Republic

16  meet that definition of public entity.  Thus, once again, even

17  accepting all of the allegations in plaintiff's complaint as true

18  and liberally construing them, the court finds that he has failed

19  to state a claim under Title II of the ADA.  Consequently,

20  defendants are entitled to dismissal of this claim under Fed. R.

21  Civ. P. 12(b)(6) as well.

22

### *iii.  Title III (Public Accommodations)*

23      Title III of the ADA prohibits discrimination against persons

24  with disabilities in places of public accommodation.  See 42 U.S.C.

25  § 12182(a).  "'Discrimination' under [that Title] encompasses the

26  denial of the opportunity, by the disabled, to participate in

27  programs or services, and providing the disabled with separate, but

28  unequal, goods or services."  National Federation of the Blind v.

1  <u>Target Corporation</u>, No. C 06-01802 MHP, 2006 WL 2578282, at *3

2  (N.D.Cal. Sept. 6, 2006) (citing 42 U.S.C. § 12182(b)(a)(A)(i-

3  iii)).   "To ensure that the disabled have full and equal enjoyment

4  of the goods and services of places of public accommodation, [Title

5  III] requires 'reasonable modification' of  'policies, practices,

6  and procedures,' the provision of auxiliary aids to ensure

7  effective communication with the disabled, and the removal of

8  architectural and communications barriers."  <u>Id.</u> (quoting 42 U.S.C.

9  § 12182(b)(2)(A)(ii-iv)).

10      U-Haul contends that plaintiff fails to state a Title III ADA

11  claim because he has not "allege[d] any facts whereby [its] . . .

12  Arizona[] office lacked access for [plaintiff] as an alleged

13  disabled person."  Doc. 8 at 4.  Similarly, U-Haul points out that

14  "the complaint does not set forth any facts that involve *physical*

15  *access* to any place of public accommodation."  <u>Id.</u> (emphasis

16  added).  U-Haul further contends, albeit implicitly, that because

17  there is no connection between plaintiff's complaints of

18  discriminatory treatment in the investigation of his personal

19  injury claim and U-Haul's physical office in Arizona, his Title III

20  ADA claim is not cognizable.  The court will separately address

21  these arguments.

22      U-Haul is correct that plaintiff does not allege that he was

23  denied physical access to its offices, or to any place of public

24  accommodation for that matter.  That omission in and of itself does

25  not entitle U-Haul to dismissal of plaintiff's Title III ADA claim,

26  however.  "[C]onsistent with the plain language of the [ADA], no

27  court has held that . . . a plaintiff has a cognizable claim *only*

28  *if* the challenged service prevents physical access to a public

- 21 -

accommodation." <u>National Federation of the Blind</u>, 2006 WL 2578282, at *5 (emphasis added).  "Further, it is clear that the purpose of the [ADA] is broader than mere physical access -- seeking to bar actions or omissions which impair a disabled person's 'full enjoyment' of services or goods of a covered accommodation." <u>Id.</u> (citing 42 U.S.C. § 12182(a)).  "Indeed, the statute expressly states that the denial of equal 'participation' or the provision of 'separate benefit[s]' are actionable under Title III." <u>Id.</u> (citing 42 U.S.C. § 12182(b)(1)(A)).  In light of the foregoing, the court declines to dismiss plaintiff's Title III claim, as U-Haul urges, based upon his failure to allege a denial of physical access to its Arizona office.

On the other hand, there is merit to U-Haul's alternative argument.  U-Haul cites to <u>Weyer v. Twentieth Century Fox Film Corp.</u>, 198 F.3d 1104, 1115 (9th Cir. 2000), for the proposition that to state a claim under Title III of the ADA, there must be "a connection between the good or service complained of and the actual physical place[,]" but U-Haul does not explain <u>Weyer</u>'s applicability here.  There is no need to speculate as to how <u>Weyer</u> impacts the present case, however, because there is an obvious deficiency in plaintiff's complaint insofar as he is attempting to assert a Title III claim against U-Haul.  That deficiency arises from the fact that the conduct of which plaintiff is complaining, <i>i.e.</i>, discriminatory treatment in the handling of an insurance claim investigation, is not, as Republic concedes, a service which U-Haul provides.  <u>See</u> Doc. 6 at 2, n.2 (The "actions alleged to have been taken by the insurer actually refer to Republic, and not 'U-Haul Trucking Company.'") Given that

concession, plainly there is no connection between the services of which plaintiff is complaining and U-Haul.  Thus, to the extent the complaint can be read as alleging a claim against U-Haul pursuant to Title III of the ADA, U-Haul is entitled to dismissal of it for failure to state a claim upon which relief may be granted.

Republic, in contrast to U-Haul, did not separately address the possibility that plaintiff is attempting to assert a Title III ADA claim against it.  Again, assuming for the sake of argument that plaintiff is "disabled," arguably his complaint can be read as alleging that Republic denied him "full enjoyment" of the insurance services which it provides by not investigating his claim because he is disabled.  This is an extremely attenuated theory of liability.  Nonetheless, the court is mindful that at this juncture the test is not whether "it may appear on the face of the [complaint] that a recovery is very remote and unlikely[.]" See Scheur v. Rhodes, 416 U.S. 232, 236 (1974).  Rather the test is whether plaintiff is entitled "to offer evidence to support the claims."  See id.  Plaintiff meets that test, although the court does have serious reservations as to whether this particular claim would survive an adequately briefed dismissal or summary judgment motion.

### iv.  Title IV (Retaliation)

Evidently defendants do not read plaintiff's complaint as alleging a claim under Title IV of the ADA as they did not address this possibility.  To be thorough this court has considered the possibility and finds that to the extent plaintiff may be relying upon Title IV, this claim fails too.  As mentioned earlier, "Title IV . . . precludes retaliation against employees who seek to

1  enforce their statutory rights under the ADA."  <u>Head</u>, 413 F.3d at
2  1064 n.54 (emphasis added).  And, as discussed in connection with
3  plaintiff's Title I claim, the complaint is void of any allegations
4  that plaintiff is or was an employee of either U-Haul or Republic.
5  Furthermore, there is nothing in the complaint which could even
6  remotely be construed as retaliatory conduct by either of these
7  defendants.  Consequently the court finds that as with nearly all
8  of his other ADA claims, plaintiff has failed to state a claim
9  under Title IV of that Act.

10      To summarize as to the ADA claims, even if plaintiff could
11  amend his complaint to satisfy that Act's exhaustion requirement,
12  with one exception, his ADA claims are legally insufficient for a
13  host of other reasons.  More specifically, plaintiff's Title I ADA
14  claim fails because he has not alleged that the actions of which he
15  is complaining arose out of an employment relationship.  Similarly,
16  plaintiff does not state a claim for retaliation under Title IV of
17  the ADA because he has not alleged that he is an employee of either
18  U-Haul or Republic, which is a necessary factual predicate to such
19  a claim.  Further, his Title II ADA claim fails because plaintiff
20  has not alleged any facts demonstrating that either of those
21  defendants is a "public entity" within the meaning of that statute.
22  Finally, plaintiff's claim under Title III of the ADA is legally
23  insufficient as to U-Haul because he has not alleged any connection
24  between the discriminatory conduct complained of and U-Haul.  It is
25  readily apparent that these particular deficiencies cannot be cured
26  by amendment.  Therefore, with one exception, the court grants the
27  defense motions to dismiss plaintiff's ADA claims for failure to
28  state a claim upon which relief may be granted.  The exception is

as to Republic's motion to dismiss plaintiff's Title III ADA claim.
The court denies this aspect of Republic's motion because there is
a possibility, albeit remote, that plaintiff can proceed against
Republic on this theory of liability.

### C.  Title VII of the Civil Rights Act of 1964

Assuming *arguendo* that plaintiff could amend his complaint to
satisfy Title VII's exhaustion requirement, nonetheless, this claim
cannot survive defendants' Rule 12(b)(6) motion to dismiss.  Nor
can this Title VII claim be saved by further amendment.

"Title VII of the Civil Rights Act of 1964 forbids *employment
discrimination* based on 'race, color, religion, sex, or national
origin[.]'" Burlington Northern and Santa Fe Ry. Co. v. White, 126
S.Ct. 2405, 2408 (2006) (emphasis added).  As previously discussed,
there are no allegations in plaintiff's complaint that he had an
employee-employer relationship with either Republic or U-Haul.
Also missing from plaintiff's complaint are any allegations that he
is a member of any of the protected classes just enumerated.  While
the latter could possibly be cured by amendment, the former could
not.  Therefore, the court grants the defendants' Rule 12(b)(6)
motion to dismiss plaintiff's Title VII cause of action.

### D.  42 U.S.C. § 1983

Consistent with its obligation to afford a *pro se* complaint a
more liberal reading than one filed by counsel, see Haines v.
Kerner, 404 U.S. 519, 520-21 (1972), it can be inferred that
plaintiff Milsap is asserting a claim under 42 U.S.C. § 1983 as
well.  This inference is bolstered by the fact that in his response
to defendants' motion to dismiss, as the "jurisdictional basi[s] of
[his] claim[,]" plaintiff recites that statute in its entirety.

See Doc. 15 at 3, ¶3.  Thus, although inartfully plead, because the
court is able to "discern" from plaintiff's complaint a section
1983 cause of action, it will address the viability of that claim.
See Athans v. Starbucks Coffee Co., No. CV-06-1841-PHX-DGC, 2006 WL
2934307, at *1 (D.Az. Oct. 12, 2006)(internal quotation marks and
citations omitted).

        Section 1983 provides a federal cause of action against
"[e]very person" who under color of state law, deprives another of
any rights, privileges, or immunities secured by the Constitution.
See 42 U.S.C. § 1983.  Thus, to state a claim under section 1983
two elements must be alleged: "(1) the conduct complained of was
committed by a person acting under color of state law and . . . (2)
the conduct deprived a person of a right, privilege, or immunity
secured by the Constitution or laws of the United States."  Hopper
v. Morrison, No. C06-5058, 2006 WL 2993045, at *2 (W.D.Wash. Oct.
17, 2006) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981),
overruled on other grounds, Daniels v. Williams, 474 U.S. 327
(1986)).

        To satisfy the first prong, "the party charged with the
constitutional deprivation must be a person who may fairly be said
to be a 'state actor.'" Nelson v. Smith, No. C06-00432RSM, 2006 WL
2690981, at * 2 (W.D.Wash. Sept. 19, 2006) (quoting Lugar v.
Edmonson Oil Co., 457 U.S. 922, 937 (1982)).  "This requirement is
necessary because '§ 1983 excludes from its reach merely private
conduct, no matter how discriminatory or wrongful.'" Id. (quoting
Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)).
"Therefore, when determining whether a private party acted under
color of law, a court 'start[s] with the presumption that private

- 26 -

1  conduct does *not* constitute governmental action.'" Id. (quoting
2  Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835 (9th
3  Cir. 1999)) (emphasis added); see also Price v. Hawaii, 939 F.2d
4  702, 707-08 (9th Cir. 1991) ("[P]rivate parties are not generally
5  acting under color of state law."); Harvey v. Harvey, 949 F.2d
6  1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a
7  private party be viewed as a 'state actor' for section 1983
8  purposes.")  The same is true when the private party is a
9  corporation.  Thus, "[c]orporations are generally not acting under
10 color of state law and alleged violations of the Constitution by a
11 corporation do[] not provide a plaintiff with a private cause of
12 action against the corporation." Thomas v. Hickman, No. CV F 06-
13 0215 AWI  SMS, 2006 WL 2868967, at *34 (E.D.Cal. Oct. 6, 2006)
14 (citing Lugar, 457 U.S. at 924).   "The only way to proceed with an
15 action against a corporation for violations of the Constitution is
16 to show that the corporation's action[s] were fairly attributable
17 to the federal or state government." Id. (citing *inter alia*,
18 Lugar, 457 U.S. at  936).

19     The allegations in plaintiff Milsap's complaint do not meet
20 the foregoing  standards.  From the face of the complaint it
21 appears that both U-Haul and Republic are private corporations or,
22 at the very least, private entities.  Further, the complaint does
23 not include any allegations to overcome the presumption that these
24 private parties are not state actors and did not act under color of
25 state law.  Nor can the complaint be read as alleging that the
26 actions of either Republic or U-Haul are fairly attributable to the
27 federal or state government.  For example, plaintiff Milsap has not
28 alleged or even hinted at "a sufficiently close nexus between the

- 27 -

1   state and the challenged action of [either] entity so that the

2   action of the latter may fairly be treated as that of the state

3   itself."  See id. (citing Blum v. Yaretsky, 457 U.S. 991, 1004-12

4   (1982)).  Likewise, plaintiff has not alleged that "the state has

5   exercised coercive power or has provided such significant

6   encouragement, either overt or covert, that the choice must in law

7   be deemed to be that of the state[.]"  Id.  Plaintiff Milsap also

8   has not alleged that either Republic or U-Haul "exercised powers

9   that are traditionally those of [the] state."  Id.

10        According to the Ninth Circuit, when a plaintiff alleges an

11  action under section 1983, "a defendant is entitled to more than

12  the bald legal conclusion that there was action under color of

13  state law."  Price, 939 F.2d at 708.  As the foregoing

14  demonstrates, the allegations in plaintiff Milsap's complaint do

15  not even go that far.  Thus, given the complete lack of any

16  allegations that defendants Republic or U-Haul were either state

17  actors or acting under color of state law, they are not amenable to

18  suit under section 1983.  See Allen v. Gold Country Casino, 464

19  F.3d 1044, 1048 (9th Cir. 2006) (citation omitted) (affirming

20  dismissal of  42 U.S.C. § 1983 claim due to lack of "allegations

21  that any defendant was acting under the color of state law[]").

22  Moreover, because it is "absolutely clear" that plaintiff Milsap

23  could not cure this defect by alleging that Republic and U-Haul are

24  state actors, the court grants their motion to dismiss plaintiff's

25  section 1983 cause of action for failure to state a claim

26  thereunder.  See Holst v. Oregon, No. 06-113-KI, 2006 WL 973051, at

27  *1 (D.Or. April 6, 2006) (citation omitted).

28

1        **_E.   Supplemental Jurisdiction_**[8]

2        Plaintiff appears to be alleging a state law based cause of

3   action over which he wants this court to exercise its supplemental

4   jurisdiction pursuant to 28 U.S.C. § 1367.  Subsection (a) of that

5   statute provides in relevant part that  "in any civil action of

6   which the district courts have original jurisdiction, the district

7   courts shall have supplemental jurisdiction  over all other claims

8   that are so related to claims in the action with such original

9   jurisdiction that they form part of the same case or controversy

10  under Article III of the United States Constitution."  28 U.S.C.

11  §1367(a).

12       Having found that plaintiff Milsap has failed to state a claim

13  for relief under Title VII, 42 U.S.C. § 1983 or under Titles I, II

14  and IV of the ADA, as opposed to having found that it lacked

15  subject matter jurisdiction over those particular claims, the court

16  "retains discretion to exercise supplemental jurisdiction, pursuant

17  to 28 U.S.C. § 1367, over pendent state-law claims."  See Arbaugh,

18  126 S.Ct. at 1244-45 (citation omitted).  In the exercise of that

19  discretion, the court will next address the respective arguments of

20  U-Haul and Republic that plaintiff fails to state a negligence

21  claim against either of them under Arizona law.

22  . . .

23

24       [8]    In addition to the federal statutes discussed above,
25  plaintiff alleges "jurisdiction" based upon Arizona Revised Statutes
    Annotated § 12-542.  Among other things, that statute provides for a
26  two year statute of limitations for various causes of action in
    Arizona, including those for personal injury.  ARIZ. REV. STAT. ANN.
27  § 12-542(1) (West 2003).  Obviously a statute of limitations, state
    or federal, does not operate to confer subject matter jurisdiction
28  upon this court.

1

### 1. *U-Haul*

2        Based upon a provision of the federal Transportation Equity

3  Act ("TEA"), which was enacted on August 10, 2005, U-Haul is taking

4  the position that plaintiff has failed to state a negligence claim

5  against it under a theory of vicarious liability.  To support this

6  argument, U-Haul accurately points out that that Act expressly

7  provides as follows:

8                    (a) In general. – An owner of a motor
                    vehicle that rents or leases the vehicle
9                    to a person (or an affiliate of the owner)
                    *shall not be liable under the law of any State*
10                   or political subdivision thereof, *by reason
                    of being the owner of the vehicle* (or an
11                   affiliate of the owner) *for harm to persons
                    or property that results or arises out of
12                   the use, operation, or possession of the
                    vehicle during the period of the rental
13                   or lease,* if –

14                       (1) the owner . ... is engaged in the
                    trade or business of renting or leasing motor
15                   vehicles; and

16                       (2) there is no negligence or criminal
                    wrongdoing on the part of the owner . . . .

17

18  49 U.S.C.A. §§ 30106(a)(1) and (2) (West Supp. 2006) (emphasis

19  added).  By its terms, section 30106 "appl[ies] with respect to any

20  action commenced on or after the date of enactment of this section

21  [August 10, 2005] without regard to whether the harm that is the

22  subject of the action, or the conduct that caused the harm,

23  occurred before such date of enactment."  49 U.S.C. §30106(c).

24  Based upon the foregoing, U-Haul reasons that because plaintiff

25  Milsap filed his complaint on January 27, 2006, *after* the enactment

26  of the [TEA,] he "cannot state a claim that [it] is vicariously

27  liable for [plaintiff's] personal injuries due to any alleged

28  negligence of the driver of the leased vehicle [Mr. Valencia]."

Doc. 8 at 6.

Without citing to any legal authority, plaintiff baldly asserts to the contrary, *i.e.* that "U-Haul . . . *is* liable for injuries obtain[ed] through there [sic] Drivers of there [sic] rental Trucks."  Doc. 15 at 2, ¶2 (emphasis added).  Given the unequivocal language of the TEA, however, the court agrees with U-Haul:  Plaintiff has not and cannot state a negligence claim against U-Haul based upon a theory of vicarious liability.  Thus, U-Haul is entitled to dismissal of plaintiff's supplemental state law negligence claim for failure to state a claim upon which relief may be granted, in accordance with Fed. R. Civ. P. 12(b)(6).

### *2. Republic*

Republic contends that it, too, is entitled to dismissal of plaintiff's supplemental negligence claim, but for a different reason than U-Haul offers.  According to Republic, plaintiff fails to state a negligence cause of action because  "'Arizona follows the general rule that, in the absence of a contractual *or* statutory provision to the contrary, an injured person has no direct cause of action against a tortfeasor's insurance company.'" Doc. 6 at 4 (quoting Maricopa County v. Barfield, 75 P.3d 714, 717 (App. 1003)) (emphasis added).  Republic observes that that "rule is consistent with the required elements of a tort action for personal injury, which include the existence of a duty and a breach thereof."  Doc. 6 at 4 (citations omitted).  Plaintiff did not respond to this argument at all.

### *IV.  Defendant Joseph Lascola*

In his amended complaint plaintiff names Joseph Lascola as a defendant.  As previously discussed, the court allowed plaintiff to

1  amend his complaint because he was entitled to "once as a matter of

2  course" given that no responsive pleading has yet been filed.  See

3  Fed. R. Civ. P. 15(a). Although it has allowed plaintiff to amend

4  his complaint to add Mr. Lascola, the court now *sua sponte*

5  dismisses all claims against this defendant.  For the reasons set

6  forth below, dismissal is mandated because plaintiff "'cannot

7  possibly win relief[]'" as to any of those claims.  See Hanson v.

8  Bush, No. CV F 06-1398 AWI LJO, 2006 WL 2949298, at *1 (E.D. Cal.

9  Oct. 16, 2006) (quoting Omar v. Sea-Land Service, Inc., 813 F.2d

10  986, 991 (9th Cir. 1987)) (other citation omitted).  The fact that

11  plaintiff "cannot possibly win relief" obviates the need for

12  notice.  See id.  In a similar vein, it should be noted that

13  dismissal is appropriate even though defendant Lascola has not been

14  served.  See id. (citations omitted).

15      Assuming that there are no other obstacles to plaintiff's

16  claims against Mr. Lascola (such as failure to exhaust), such

17  claims would otherwise be barred, rendering dismissal appropriate.

18  First, insofar as plaintiff is attempting to assert ADA claims

19  against Mr. Lascola, dismissal is mandated because "district courts

20  within the Ninth Circuit have repeatedly held that an individual

21  cannot be liable under the ADA, including an ADA retaliation

22  claim." Link v. Rhodes, No. C 06-0386 MHP, 2006 WL 1348424, at *5

23  (N.D. Cal. May 17, 2006) (internal quotation marks and citations

24  omitted).  Second, to the extent the complaint can be read as

25  asserting that defendant Lascola violated Title VII, dismissal also

26  is proper because the complaint does not include any allegations of

27  employment discrimination -- the essence of any Title VII claim.

28  See Burlington Northern, 126 S.Ct. at 2408.  Third, plaintiff also

1  fails to state a section 1983 claim against Lascola because he does

2  not even suggest, let alone allege, that Lascola is not a private

3  party.  And, as discussed in section III(D)above, section 1983

4  "excludes from its reach merely private conduct, no matter how

5  discriminatory or wrongful."  See Nelson, 2006 WL 2690981, at *2

6  (internal quotation marks and citation omitted).  In light of the

7  foregoing, the court sua sponte dismisses all claims against Mr.

8  Lascola.

9  **V.  Joseph Valencia**

10      The reasons outlined above for dismissing plaintiff's ADA,

11  Title VII and section 1983 claims against defendant Lascola apply

12  with equal force to defendant Valencia.  Therefore, the court also

13  sua sponte dismisses these claims as alleged against defendant

14  Valencia.  After dismissing those federal claims, the only

15  remaining claim against defendant Valencia is for negligence.

16  In sharp contrast to the federal claims, at this early stage in the

17  litigation it is not clear that plaintiff "cannot possibly win

18  relief" against defendant Valencia on a negligence theory.  Thus,

19  the court will allow plaintiff's negligence claim against defendant

20  Valencia to stand.

21  **VI.  Further Amendment**

22      If plaintiff Milsap elects to continue this litigation, and to

23  do so pro se, he is advised that he must become familiar with, and

24  follow, the Federal Rules of Civil Procedure and the Rules of the

25  United States District Court for the District of Arizona ("Local

26  Rules"), a copy of which may be obtained from the Clerk of the

27  Court's Office.  Despite plaintiff's pro se status, he is

28  nonetheless "bound by the rules of procedure."  Ghazali v. Moran,

1   46 F.3d 52, 54 (9th Cir. 1995) (citation omitted).  Plaintiff is
2   further advised that if he elects to file and serve a second
3   amended complaint, he must do so in conformity with the court's
4   rulings herein.  Furthermore, plaintiff should be aware that he
5   will waive "'[a]ll causes of action alleged in [his] [first
6   amended] complaint which are not alleged in [his] [second] amended
7   complaint[.]'" Athans, 2006 WL 2934307, at *3 (quoting King v.
8   Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987)).  By the same token,
9   however, plaintiff may not allege again those causes of action
10  which have been dismissed.

11  ### VII.  *Motion for a More Definite Statement*

12       To the extent the court denies Republic's motion to dismiss
13  plaintiff's ADA and "Civil Rights Act of 1964" claims,
14  alternatively, Republic is moving for a more definite statement
15  pursuant to Fed. R. Civ. P. 12(e).  The court denies this Rule
16  12(e) motion in its entirety.  First, granting the motion to
17  dismiss plaintiff's Title VII and section 1983 based causes of
18  action renders moot Republic's motion for a more definite statement
19  as to those claims.  Second, although the court is not dismissing
20  plaintiff's ADA claims altogether, it likewise finds Republic's
21  motion for a more definite statement moot.  This aspect of
22  Republic's motion is moot because allowing plaintiff to amend his
23  complaint with respect to his Title III ADA claim against Republic
24  is the functional equivalent of a more definite statement in that
25  it will apprize Republic of the bases for that claim.  See Athans,
26  2006 WL 2934307, at *3 (denying as moot motion for a more definite
27  statement where court dismissed *pro se* complaint with leave to
28  amend).  Republic will then, of course, be free to make whatever

motion it deems necessary and appropriate.

To summarize, in light of the court's rulings herein, at this juncture the following causes of action remain: (1) a claim under Title III of the ADA against Republic; and (2) a supplemental state law based negligence claim against defendant Joseph Valencia.

### *Conclusion*

To conclude, the court hereby:

(1) GRANTS the motion by plaintiff Andrew N. Milsap to amend his complaint pursuant to Fed. R. Civ. P. 15 (doc. 11);

(2) DENIES defendant Republic Western Insurance Company's request for summary disposition (doc. 13);

(3) DENIES defendant U-Haul Company of Arizona's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) (doc. 8);

(4) GRANTS defendant U-Haul Company of Arizona's motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) (doc. 8);

(5) GRANTS defendant Republic Western Insurance Company's motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) as to the claims premised upon Titles I, II and IV of the ADA; Title VII of the Civil Rights Act of 1964; and 42 U.S.C. § 1983; but DENIES this motion as to the claims premised upon Title III of the ADA and plaintiff's supplemental state law based claim;

(6) *sua sponte* DISMISSES all claims against defendant Joseph Lascola for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6);

(7) *sua sponte* DISMISSES all federal law based claims against

1  defendant Albert Valencia;

2      (8) DENIES the alternative motion by defendant Republic

3  Western Insurance Company for a more definite statement pursuant to

4  Fed. R. Civ. P. 12(e) (doc. 6;)

5      (9) ORDERS that if plaintiff desires to proceed with this

6  action, he must file and serve his second amended complaint within

7  thirty (30) days of the date of this order and such amended

8  complaint must be in full conformity with the court's rulings

9  herein; and

10      (10) ORDERS that plaintiff shall not reallege claims which

11  have been dismissed herein.

12      DATED this 18th day of December, 2006.

13

14  _____

15      Robert C. Broomfield
    Senior United States District Judge

16

17

18

19  Copies to plaintiff, pro se, and counsel of record

20

21

22

23

24

25

26

27

28